**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING MOTION TO** |
| vs. | ) | **DISMISS** |
| | ) | |
| Lamar Warren, | ) | Case No. 3:24-cr-58 |
| | ) | |
| Defendant. | ) | |

Defendant Lamar Warren moves to dismiss on speedy trial. Doc. 462. The United States

opposes the motion. Doc. 466. A motion hearing was held on July 8, 2026. Doc. 495. For the

reasons below, the motion is denied.

## I.    BACKGROUND

On April 18, 2024, Warren and eight co-defendants were indicted for conspiracy to possess

with intent to distribute, among other charges. Doc. 3. Warren had his initial appearance on May

2, 2024. Doc. 36. A detention hearing was held on May 6, 2024, and Warren was ordered detained

pending trial. Doc. 49.

A co-defendant, Collin Posey, was a fugitive for a significant time. In May 2024, the United

States moved for Posey's indictment and arrest warrant to be unsealed in attempt to seek help to

locate Posey. Doc. 81. The Court granted the motion. Doc. 82. In July 2024, law enforcement

located Posey in Grand Forks, ND. He was arrested on state and federal warrants. Doc. 463-2. He

was taken to Altru Hospital to be medically cleared, and while there, he attempted to escape. Docs.

466-2; 466-3; 466-4. He was charged by the state with escape and other charges. Id. He remained

detained at the Grand Forks County Correctional Center. Doc. 463-4. Meanwhile, on October 28,

2024, Warren filed a demand for speedy trial. Doc. 215.

On December 26, 2024, Posey was sentenced to state prison on the escape charge. Id. On January 21, 2025, he was sentenced to state prison on a burglary charge. He arrived at the North Dakota State Penitentiary on February 14, 2025. Doc. 466-7. On February 19, 2025, the United States filed an application for writ of habeas corpus. Doc. 255. United States Magistrate Judge Alice Senechal granted the application. Doc. 256. Posey was arrested on March 3, 2025, and had his initial appearance and arraignment the same day. Docs. 258; 259. The Court set trial for May 6, 2025. Doc. 260.

On March 28, 2025, Posey moved to continue trial. Doc. 277. Warren objected to the continuance and moved to sever. Doc. 280. The Court granted the continuance, denied the motion to sever, and set trial for October 7, 2025. Docs. 291; 305. Posey and another co-defendant moved again to continue trial. Docs. 345; 351. Warren objected to the continuance and moved to sever. Doc. 347. The Court granted the continuance, denied the motion to sever, and reset trial for February 24, 2026. Doc. 358. In each order continuing trial, the time from the date of the orders to the new trial date was excluded from the speedy trial calculation. Docs. 291; 358.

On January 20, 2026, co-defendant Maurice Haymon, Jr. moved to continue trial. Doc. 382. Warren objected to the continuance (Doc. 384) and moved to sever (Doc. 386). On February 9, 2026, co-defendant Joseph Martell moved to continue trial. Doc. 390. The Court held a status conference on February 12, 2026. Doc. 394. At the conference, Haymon and Martell indicated they were not prepared for trial on February 24, 2026. Id. On February 19, 2026, the Court granted the motion to continue trial and granted Warren's motion to sever. Doc. 419. The co-defendants' trial was continued to July 28, 2026, and Warren's trial date remained on February 24, 2026. Id.

Meanwhile, on February 10, 2026, the United States filed an expert witness notice. Doc. 392. Warren objected to the expert notice and requested that the experts be excluded from

testifying. Doc. 411. The Court held a status conference on February 23, 2026. Doc. 428. At the conference, Warren argued the experts should be excluded due to the United States' untimely disclosure. Doc. 431. The United States requested a continuance as a remedy for the late disclosure. Id. Warren objected to a continuance. The Court ordered that trial be continued and that Warren be rejoined with the other co-defendants, with trial to begin on July 28, 2026. Id.

## II.    LAW AND ANALYSIS

Although related, constitutional challenges under the Sixth Amendment speedy trial right and statutory challenges under the Speedy Trial Act are reviewed separately. United States v. Sprouts, 282 F.3d 1037, 1041 (8th Cir. 2000). Warren makes a constitutional speedy trial challenge under the Sixth Amendment. Doc. 463 at 4. Out of an abundance of caution, and because the United States discussed the Speedy Trial Act in its response (Doc. 466), the Court will also address Warren's statutory speedy trial right.

### A.    Speedy Trial Act

The Speedy Trial Act requires trial to commence within 70 days after a defendant is charged or makes an initial appearance, whichever occurs last. 18 U.S.C. § 3161(c)(1); see also Zedner v. United States, 547 U.S. 489, 497 (2006). That said, certain circumstances toll the speedy trial clock. See 18 U.S.C. § 3161(h). For example, a pending pretrial motion tolls the clock. 18 U.S.C. § 3161(h)(1)(D). So too if the Court finds the ends of justice served by granting a continuance outweigh the interest of the public and the defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(a). "Exclusions of time attributable to one defendant apply to all codefendants." United States v. Mallett, 751 F.3d 907, 911 (8th Cir. 2014) (cleaned up).

In multi-defendant cases like this, the timing of the protections of the Speedy Trial Act reset when a co-defendant is indicted or makes their first appearance (whichever occurs later). See

e.g., United States v. Boyd, 2023 WL 6603276, at *3 (D.S.D. Oct. 10, 2023). The Eighth Circuit has explained:

> Pursuant to § 3161(h)(7), when a newly indicted . . . defendant is joined with a defendant whose speedy trial clock has already started running, the latter defendant's speedy trial clock will be reset so that it reflects the speedy trial clock of the newly added codefendant. Thereafter, all of the defendants are subject to one controlling speedy trial clock and any time periods excluded from the speedy trial calculations for one defendant will be applicable to the other defendants.

United States v. Lightfoot, 483 F.3d 876, 885-86 (8th Cir. 2007). Here, the last defendant made his first appearance on March 3, 2025. Docs. 249; 259. Warren's Speedy Trial Act "clock" began to run then. Trial continuances were granted on the following dates: April 4, 2025; September 30, 2025; February 19, 2026; February 23, 2026. Docs. 291; 358; 419; 430; 431. In each order, all time elapsing from the date of the order until the new trial date was excluded from any Speedy Trial Act calculation in the interest of justice under 18 U.S.C. § 3161(h)(7)(A) and 18 U.S.C. §§ 3161(h)(7)(B)(i) and (iv). So, at a minimum, only the time from March 3, 2025, through April 4, 2025 (when the first motion to continue was filed) has elapsed under the Speedy Trial Act. That amounts to a period of 25 days. Because fewer than 70 nonexcludable days have passed, Warren's motion fails to the extent he seeks dismissal under the Speedy Trial Act.

**B.    Sixth Amendment**

In contrast to the Speedy Trial Act, the Sixth Amendment speedy trial right "attaches at the time the of arrest or indictment, whichever comes first, and continues until the trial commences." United States v. Williams, 557 F.3d 943, 948 (8th Cir. 2009) (citations omitted). A constitutional speedy trial challenge requires a court to "engage in a difficult and sensitive balancing process." Barker v. Wingo, 407 U.S. 514, 533 (1972). Four factors control: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Id. at 530. No one factor is "a necessary or sufficient condition" to establish a violation. Id. at 533. The

Eighth Circuit Court of Appeals has stated that it would be "unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not." United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003) (citing Sprouts, 282 F.3d at 1042).

In application, the initial length of delay factor is twofold. First, the length of delay must be presumptively prejudicial before consideration of the Barker factors is warranted at all. United States v. Summage, 575 F.3d 864, 875 (8th Cir. 2009). Warren's initial appearance was on May 2, 2024, over two years ago. Doc. 36. That is enough to establish presumptive prejudice. See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992) (citations omitted) (noting that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year"); United States v. Sims, 847 F.3d 630, 635 (8th Cir. 2017) (concluding that approximately 22-month delay was presumptively prejudicial). Second, the length of delay weighs on the Barker analysis in the main. See Mallett, 751 F.3d at 914. In excess of two years is certainly a significant delay between initial appearance and trial. Even so, that duration is not extraordinary, particularly considering that the Eighth Circuit has deemed similar delays reasonable. See, e.g., Summage, 575 F.3d at 876 (32-month delay); United States v. Aldaco, 477 F.3d 1008, 1019-20 (8th Cir. 2007) (40-month delay). On balance, the first factor weighs in Warren's favor but not heavily.

Regarding the second factor and the reason for the delay, there is no indication that the United States negligently or intentionally delayed prosecution. See Barker, 407 U.S. at 531. Instead, the delay was primarily to give co-defendants time to review the discovery and prepare their case. Warren's co-defendants requested continuances numerous times and the Court granted those continuances, finding the ends of justice were served by doing so. See, e.g., Doc. 291. At the motion hearing, Warren argued the United States' untimely disclosure of their expert witness

shows negligence or an intentional attempt to delay prosecution. Further, Warren argued much of the delay is attributable to the United States due to the lengthy delay in brining co-defendant Posey to federal court. Doc. 463 at 7. The United States responded that the continuance after the expert disclosure was not an attempt to delay trial but rather a curative attempt to fix the disclosure issue. As to Posey, the United States argued that other co-defendants had yet to appear during the time that Posey remained in state custody, which cuts against Warren's argument that the United States was negligent in locating him or that they delay was unreasonable. Given the variety of reasons for continuing trial in this case, the Court finds this factor is neutral.

As to the third factor, Warren asserted his speedy trial right on October 28, 2024, around six months after indictment. Doc. 215. Since then, he has objected to trial continuances and requested severance from his co-defendants. Docs. 280; 347; 384; 386. In general, "[C]ourts in the Eighth Circuit have not held that a defendant's assertion of his speedy trial right strengthens his case, only that a failure to assert it may weaken his case." United States v. Soto, No. 5:18-cr-50050-01-KES, 2021 WL 1176068, at *8 (D.S.D. Mar. 29, 2021) (citing United States v. Weber, 479 F.2d 331, 333 (8th Cir. 1973)); United States v. Cooley, 63 F.4th 1173, 1178-79 (8th Cir. 2023) (holding that the third Barker factor was neutral and weighed in neither party's favor after the district court found that the defendant "undeniably asserted his right to a speedy trial"). This factor is neutral.

The last factor, "the degree of prejudice required, if any, depends on the defendant's showing under the preceding Barker factors." Sims, 847 F.3d at 636 (citing United States v. Erenas-Luna, 560 F.3d 772, 780 (8th Cir. 2009)). Taken together, the first three Barker factors do not weigh heavily in Warren's favor. He is therefore not entitled to a presumption of prejudice; rather, he must show actual prejudice. United States v. Rodriguez-Valencia, 753 F.3d 801, 808

(8th Cir. 2014). Courts look to the three primary interests of the speedy trial right when examining prejudice: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532. Impairing the defense is considered the most serious consideration. Id.

Here, Warren asserts that all three interests have been negatively impacted. First, he argues that he has been incarcerated since May 2024 and that, by the time trial begins in July 2026, "he will have spent more than twenty-six months locked up awaiting his 'speedy' trial." Doc. 463 at 11. He continues, stating he "has repeatedly asked this Court to release him to avoid the oppressive pretrial incarceration he has suffered. Every time Mr. Warren has requested release, he has been denied." Id. At the motion hearing, the United States responded that Warren's pretrial incarceration is not oppressive or punitive in nature and is instead based on Warren's dangerousness and flight risk. The Court agrees with the United States. In the various orders denying Warren's release, Judge Senechal referenced his extensive criminal history, history of violating court-ordered release conditions and failures to appear, and his repeated non-compliance with state supervision. See, e.g., Docs. 205, 451. Judge Senechal found that Warren's continued detention was warranted based on those considerations. Warren does not raise any other allegations to show how his incarceration has been "oppressive," and as such, the Court finds this argument unpersuasive.

Next, Warren argues that the interest of "minimizing the anxiety and concern of the accused" has also been negatively impacted. Doc. 463 at 11. He "has watched his trial date set, continued, reset, continued again, reset again, and now continued and reset for a third time." Id. He "has lived for more than two years with no end in sight, no certainty, and no control over when he will finally face the charges against him." Doc. 463 at 11. Without demeaning the anxiety and concerns Warren expresses, courts have consistently held that generalized anxiety or

inconvenience, without specific evidence of impairment to the defense, is insufficient to establish prejudice under the Barker analysis. See United States v. Shepard, 462 U.S. F.3d 847, 865 (8th Cir. 2006) ("Anxiety, without concurrent prejudice to the defendant's ability to mount a defense, is likely the weakest interest served."). And as described below, the Court does not find that Warren has suffered prejudice as to his ability to mount a defense.

Warren argues his defense has been impaired because "[w]ith every passing month, memories fade, witnesses become harder to locate, and evidence becomes harder to preserve." Doc. 463 at 11. He alleges the discovery in this case "shows that nearly every key witness has substantially changed their statements over the twenty seven month period, and the changes are not minor." Id. Warren describes two witnesses whose statements have allegedly changed since the start of the proceedings. Id. at 12. At the motion hearing, defense counsel introduced four exhibits in support of this argument. Docs. 495-1; 495-2; 495-3; 495-4. The first two exhibits are the witnesses' initial proffer interviews and the remaining exhibits are the witnesses' pre-trial interviews. Warren argues that the witnesses' proffer interviews described having minimal interaction with him but their pre-trial interviews claimed, for example, that they "dealt with Mr. Warren on several occasions and had personally seen hundreds, if not thousands, of pills handed to him" or that they had "approximately sixty dealings" with him. Doc. 463 at 12. At the motion hearing, Warren suggested that the two witnesses might have been witnesses for the defense if trial had taken place in the first 70 days post-indictment.

In response, the United States argues that witnesses providing additional information does not demonstrate faded memories but instead "weighs toward them having a clearer mind not altered by substances." Doc. 466 at 16. For example, one witness stated in her pre-trial interview that she did not provide as much information during her proffer interview because she was not

asked additional questions about Warren and because everything was "foggy" at the time. Doc. 466 at 16; Doc. 495-1 at 1. The United States further asserts that these witnesses do not demonstrate an inability for Warren to mount his defense and that he can cross examine witnesses regarding inconsistencies in their stories.

The Court agrees. Despite Warren's claim that "nearly every key witness has substantially changed their statements over the twenty seven month period," he fails to allege more than the two witnesses above. And perhaps more importantly, even if Warren had alleged more, he does not convince the Court that this has impaired his defense. His speculative suggestion that the two witnesses might have served as defense witnesses does not amount to actual prejudice. As the United States argues, Warren will have ample opportunity at trial to conduct cross examination regarding witness statements to law enforcement. Warren provides no other details as to what evidence has become "harder to preserve" or what other witnesses have "become harder to locate." There is also no evidence offered to show that Warren was unable to prepare for trial. He cannot show prejudice as a result. After careful consideration of the Barker factors, there has been no violation of Warren's Sixth Amendment right to a speedy trial.

III.    **CONCLUSION**

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, Warren's motion to dismiss (Doc. 462) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 10th day of July, 2026.

_/s/ Peter D. Welte_
Peter D. Welte, Chief Judge
United States District Court

9